# EXHIBIT 16

## TITRE VII :
### *Divers*

#### Article 32 :

Tout associé domicilié en dehors de la République Démocratique du Congo sera censé élire domicile au siège social de la société où toutes notifications, sommations, assignations, lui seront faites.

Les Gérants, Commissaires et liquidateurs qui résident hors de la République Démocratique du Congo seront censés, pendant toute la durée de leurs fonctions, élire domicile au siège social où toutes assignations et notifications peuvent être données relativement aux affaires de la société et à responsabilité de leur gestion et de leur contrôle.

#### Article 33 :

Toutes contestations qui pourront surgir entre les associés ou lors de la liquidation de la société seront soumises à l'appréciation des Tribunaux de Kinshasa.

#### Article 34 :

Toutes clauses des présentes qui seraient contraires à des dispositions impératives du Décret du vingt-trois juin mil neuf cent soixante, complétant la législation relative aux sociétés commerciales seront réputées non écrites.

Toutes dispositions impératives dudit Décret ne figurant pas aux présents statuts seront censées en faire partie intégrante.

Fait à Kinshasa, le 08 décembre 2003.

1. Mr. Mbeko Lembwa
   P.O. Kisangani
2. Mlle Mbeko Mwa Esaka Irène
   P.O. Kisangani
3. Mlle Mbeko Siapata Pamela
   P.O. Kisangani
4. Mlle Mbeko Leaticia
   P.O. Kisangani
5. Mr. Mbeko Michaël
   P.O. Kisangani
6. Mlle Mbeko Amisi Tania
   P.O. Kisangani
7. Mme Kisangani Siapata

### *Acte notarié*

L'an deux mil trois, le douzième jour du mois de décembre,

Nous soussigné, Jean A. Bifunu M'Fimi, Notaire de la ville de Kinshasa et y résidant certifions que les statuts de la société Kis-Construct sise avenue du commerce numéro 4753 dans la commune de la Gombe, dont les clauses sont ci-dessus insérées, nous a été présenté ce jour à Kinshasa par :

- Madame Kisangani Siapata, de nationalité congolaise, née à Kisangani, le douze mai mil neuf cent cinquante sept, résidant à Kinshasa sur l'avenue Forêt n°9 dans la commune de Ngaliema.

Comparaissant en personne, en présence de Messieurs Bangu Roger et Zele Mawa agents de l'Administration, résidant tous deux à Kinshasa, témoins instrumentaires à ce requis, réunissant les conditions exigées par la Loi.

Lecture du contenu de l'acte susdit a été faite par nous, Notaire, aux comparants et témoins.

Le comparant pré qualifié a déclaré devant nous et en présence desdits témoins que l'acte susdit tel qu'il est dressé renferme bien l'expression de leur volonté, qu'il est seul responsable de toutes contestations pouvant naître de l'exécution des présentes sans évoquer la complicité de l'Office Notarial ainsi que du Notaire ;

En foi de quoi, les présentes ont été signées par nous, Notaire, les comparants et les témoins et revêtues du sceau de l'Office Notarial de la ville de Kinshasa.

*Signature du comparant*     *Signature du Notaire*

Madame Kisangani Siapata     Jean A. Bifunu M'Fimi

*Signature des témoins*

Bangu Roger                                  Zele Mawa

Droit perçus Frais acte 3.700FC

Suivant quittance numéro R4/250.651/003 en date de ce jour ;

Enregistré par nous soussigné, ce douze décembre l'an deux mil deux, à l'Office Notarial de la ville de Kinshasa sous le n° 146-367 folio 120-129 volume DCIII.

*Le Notaire*

Jean A. Bifunu M'Fimi

Pour expédition certifiée conforme.

Coût : 3.700 FC ; Quittance numéro R4/ 250.651/003.

Kinshasa, le 12 décembre 2003.

*Le Notaire*

Jean A. Bifunu M'Fimi

---

### Sezo International Trading Company Limited Sprl

#### *Statuts*

Entre les soussignés :

1. Selemani Francis Mtwale, Administrateur de sociétés, de nationalité congolaise, né à Moba (RDC) le vingt cinq mars mille neuf cent soixante dix sept demeurant avenue Eboka n° 18, quartier Joli Parc à Kinshasa, commune de Ngaliema ;
2. Zoe Francis Mtwale, Administrateur de sociétés, de nationalité congolaise, né à Dar Es-Salaam (Tanzanie), le vingt six juin mille neuf cent soixante dix huit demeurant avenue Eboka n° 18, quartier Joli Parc à Kinshasa, commune de Ngaliema ;
3. Masengo Francis Mtwale, Administrateur de sociétés, de nationalité congolaise né à Dar Es-Salaam (Tanzanie), le vingt trois mars mille neuf cent quatre vingt quatre vingt un demeurant avenue Eboka n° 18, quartier joli parc à Kinshasa, commune de Ngaliema ;
4. Mlindwa Francis Mtwale, mineur d'âge, de nationalité congolaise né à Dar Es-Salaam (Tanzanie) le vingt sept mars mille neuf cent quatre vingt sept demeurant avenue EBOKA n°18, quartier Joli Parc à Kinshasa, commune de ngaliema et représenté à l'acte par sa mère Mme Vumilia Thomas ;

Il a été convenu et arrêté ce qui suit :

## TITRE I :
### *Dénomination – Siège – Objet – Durée*

#### Article 1er :

Il est constitué entre les personnes susmentionnées et ce, conformément à la législation en vigueur en République Démocratique du Congo, une Société Privée à Responsabilité Limitée dénommée « Sezo International Company Limited » S.I.T.C. en sigle.

**Article 2 :**

Le siège social est établi avenue Eboka n° 18, quartier Joli Parc à Kinshasa, commune de ngaliema. Il pourra être transféré par simple décision de la gérance en tout autre endroit de la République Démocratique du Congo. Il pourra être établi des sièges administratifs, des succursales, bureaux, dépôts ou agences en n'importe quel lieu, tant en République Démocratique du Congo qu'à l'étranger par simple décision du ou des Gérants.

**Article 3 :**

La société a pour objet, de pour elle-même ou pour compte de tiers, soit par elle-même, soit par l'intermédiaire de tiers ou sous toutes autres formes d'effectuer toutes activités minières, à savoir, tous services, fournitures ou travaux de l'art des mines directement liés à la prospection, à la recherche, à l'exploitation minière et aux substances minérales, en ce compris les travaux de développement, de construction et d'infrastructure. Elle peut accomplir toutes opérations généralement quelconques se rapportant directement ou indirectement à son objet social.

Elle peut s'intéresser par voie d'apports, de fusion, d'absorption, de souscription, de participations financières ou autrement dans toutes sociétés ou entreprises existantes ou à créer, ayant un objet analogue ou connexe au sien, ou de nature à faciliter ou favoriser la réalisation de son objet.

**Article 4 :**

La société pourra en tout temps, moyennant l'adhésion unanime des associés, se transformer en une société d'un autre type, sans que cette transformation donne naissance à une personne morale nouvelle.

**Article 5 :**

La société est constituée pour une durée indéterminée prenant cours à dater de l'acte notarié authentifiant les présents statuts.

### TITRE II :
*Capital social – Parts sociales – Souscription – Libération*

**Article 6 :**

Le capital social est fixé à douze millions trois cent mille Francs Congolais (F.C 12.300.000.), représenté par 100 parts sociales sans désignation de valeur nominale, souscrit en numéraires comme suit :

1. Selemani F. Mtwale  : trente cinq (35) parts (soit F.C 4.305.000) ;
2. Zoe F. Mtwale       : trente cinq (35) parts (soit F.C 4.305.000) ;
3. Masengo F. Mtwale   : quinze (15) parts (soit F.C 1.845.000) ;
4. Mlindwa F. Mtwale   : quinze (15) parts (soit F.C 1.845.000) ;
   Soit au total       : 100 (cent) parts sociales.

Les comparants déclarent que chaque part ainsi souscrite est libérée pour moitié de sorte que la société a dès à présent, de ce chef, à sa disposition, ainsi que tous les comparants le reconnaissent, la somme de douze millions trois cent mille Francs Congolais.

**Article 7 :**

Chaque associé n'est responsable des engagements de la société qu'à concurrence du montant de sa participation.

**Article 8 :**

Le capital social ne pourra être augmenté ou réduit que par décision de l'Assemblée Générale délibérant dans les conditions requises pour la modification des statuts. L'Assemblée Générale détermine les modalités de l'augmentation ou de la réduction de capital. L'augmentation du capital peut se faire avec ou sans émission de parts sociales nouvelles. En cas d'augmentation avec émission de parts sociales nouvelles, l'Assemblée Générale fixe les conditions d'émission et de souscription des parts.

**Article 9 :**

Chaque part sociale confère un droit égal dans la répartition des bénéfices et des produits de la liquidation. Les parts sont indivisibles. S'il y a plusieurs propriétaires d'une part indivise, l'exercice des droits y afférent est suspendu jusqu'à ce qu'une seule personne ait été désignée comme étant, à l'égard de la société, propriétaire de la part sociale. En cas d'usufruit, les parts sont inscrites au nom de l'usufruitier pour l'usufruit, et du nu-propriétaire pour la nue-propriété. Le droit de vote est suspendu jusqu'à ce que le nu-propriétaire et l'usufruitier s'accordent pour désigner une seule personne pour l'exercer.

**Article 10 :**

Les héritiers d'un associé ne peuvent sous aucun prétexte, requérir l'apposition de scellés sur les biens, valeurs et documents de la société ni en demander le partage ou la liquidation, ni s'immiscer en aucune manière dans les actes de son Administration. Ils seront tenus, pour l'exercice de leurs droits, de s'en rapporter aux comptes et inventaires sociaux ainsi qu'aux décisions de l'Assemblée Générale, sans exiger aucune pièce ou inventaire Extraordinaire.

**Article 11 :**

Les parts d'un associé ne peuvent, à peine de nullité, être cédées entre vifs ou à cause de mort qu'avec l'agrément de la moitié au moins des associés, possédant les trois quarts au moins du capital, déduction faite des droits dont la cession est proposée. Toutefois, cet agrément n'est pas requis lorsque les parts sont cédées ou transmises :

1. à un associé,
2. au conjoint du cédant ou du testateur,
3. à un des descendants ou ascendants en ligne directe,
4. à d'autres personnes agréées par les statuts.

**Article 12 :**

L'ancien associé ou celui qui postule son entrée dans la société signalera par écrit au Gérant :

1. le nombre de parts sur lequel portera le transfert,
2. la désignation précise du postulant et du cédant,
3. son désir d'agréation par les associés. La gérance convoquera l'Assemblée Générale conformément aux prescrits de la législation commerciale. En cas de transmission des parts pour cause de mort, les ayants-droits reconnus de l'associé décédé seront tenus, dans les plus bref délais, de faire connaître à la gérance leurs noms, prénoms, professions et domiciles et de justifier de leurs qualités héréditaires en produisant des actes réguliers établissant ces qualités à titre universel ou particulier, et de désigner éventuellement celui d'entre eux qui remplira les fonctions de mandataire commun, conformément à l'article 9 des présents statuts. Jusqu'à ce qu'ils aient produit cette justification, les ayants-droits du défunt ne pourront exercer aucun des droits appartenant à ce dernier vis-à-vis des associés survivants de la société. Celle-ci suspendra notamment le paiement des dividendes revenant aux parts du défunt et les intérêts des créances de ce dernier sur la société. Les ayants-droits et représentants de l'associé décédé ne pourront sous aucun prétexte s'immiscer dans les actes de l'Administration sociale. Ils devront, pour l'exercice de leurs droits, s'en rapporter aux inventaires, comptes, bilans et écritures de la société, ainsi qu'aux inventaires, comptes, bilans et écritures de la société, ainsi qu'aux décisions régulièrement prises par l'Assemblée des associés. Cet article s'appliquera mutatis mutandis en cas de transmission pour cause de dissolution dans l'hypothèse où le ou les associés serait une personne morale.

Article 13 :

En cas de refus d'agréation, le cédant ou les ayants-droits d'un associé décédé renoncent à demander en Justice la dissolution de la société devant le tribunal, par dérogation à l'article 59 du Décret du vingt trois juin mil neuf cent soixante tel que modifié à ce jour, mais ils auront droit à la valeur des parts. Ils pourront en demander le rachat par lettre avec accusé de réception adressée au Gérant de la société dont copie sera aussitôt transmise par le ou les Gérants aux autres associés. A défaut d'accord sur la valeur des parts et les modalités de paiement de celles-ci, la valeur des parts sera déterminée et payée de la manière suivante : le montant du capital sera diminué ou majoré suivant les cas, de la moyenne des résultats accusés par les deux derniers bilans et divisés par le nombre de parts sociales existantes. Cette valeur sera communiquée par le Gérant par lettre avec accusé de réception aux associés et aux cédants et le prix sera payé sans intérêts dans un délai d'un an prenant cours au jour de l'envoi de ladite lettre, en quatre versements trimestriels égaux et pour la première fois, trois mois après le jour de l'envoi de ladite lettre.

Article 14 :

La part sociale est représentée par un titre nominatif et non à ordre ou au porteur. Le titre de chaque associé résultera du présent acte ou de ceux qui le modifieront ultérieurement ainsi que de cessions régulièrement consenties. Les parts sociales, qui par mesure d'ordre intérieur, peuvent être numérotées, seront inscrites sur le registre des associés qui sera tenu au siège social et qui contiendra :

1. la désignation précise de chaque associé ;
2. le nombre de parts appartenant à chaque associé ;
3. l'indication des versements effectués ;
4. les cessions entre vifs de parts sociales avec leurs dates, signées et datées par le cessionnaire ou le mandataire ;
5. les transmissions pour cause de mort ainsi que les attributions de parts sociales avec leurs dates, signées et datées par la gérance et le bénéficiaire ou leur mandataire ;
6. les affectations d'usufruit ou de gage.

Tout associé peut prendre connaissance de ce registre et se faire remettre, à ses frais, un extrait de ce registre.

Article 15 :

Les cessions entre vifs, les transmissions pour cause de mort, les attributions en cas de partage et les adjudications en suite d'une vente publique, ne sont opposables à la société qu'à dater de leur inscription dans le registre des associés. Il en est de même à l'égard des tiers qui peuvent néanmoins s'en prévaloir.

TITRE III :
*Gérance – Surveillance*

Article 16 :

La société est administrée par un ou plusieurs Gérants, associés ou non, désignés par l'Assemblée Générale. En cas de démission de l'Assemblée Générale qui fixera la durée de ses fonctions ainsi que ses pouvoirs.

Article 17 :

Les Gérants ont tous pouvoirs d'agir au nom ou pour compte de la société, avec pouvoir de substitution total. Ils peuvent agir conjointement ou séparément sans limitation de pouvoir. Chaque Gérant pourra notamment, sous sa seule signature, faire tous achats et vente de marchandises, conclure et exécuter tous marchés, dresser tous comptes et factures, souscrire tous billets, chèques, lettres de change, les accepter, endosser, escompter, ouvrir tous comptes en banque, caisses, administrations des postes et douanes et au service des chèques postaux, faire tous versements, virements, dépôts, retraits de sommes, en donner ou retirer toutes quittances ou décharges négocier toutes ouvertures de crédit et prêts et, en général, effectuer tous actes de gestion commerciale journalière au sens le plus large. Pour les actes d'achat et vente d'immeuble, constitution ou mainlevée d'hypothèques, une autorisation de l'Assemblée Générale sera nécessaire et indispensable.

Article 18 :

Dans tous les actes engageant la responsabilité de la société, la signature du Gérant doit être précédée de la dénomination de la société suivie immédiatement de la qualité en vertu de laquelle il agit.

Article 19 :

L'Assemblée Générale alloue aux Gérants une allocation fixe à porter en frais généraux, en rémunération de son travail et en compensation de la responsabilité qu'il assume de par ses fonctions. Elle fixe de même, par forfait ou autrement, les frais de représentation, de déplacement ou autre par lequel il a droit à être remboursé.

Article 20 :

Les Gérants pourront être révoqués conformément aux prescrit de la législation commerciale.

Article 21 :

Les Gérants ne contractent aucune obligation personnelle relativement aux engagements de la société.

TITRE IV :
*Assemblée Générale*

Article 22 :

Les décisions des associés sont prises à la majorité simple des voix en Assemblée Générale, laquelle aura les pouvoirs les plus étendus pour faire ou ratifier tous actes qui intéressent la société. Il doit se tenir une Assemblée Générale une fois l'an au siège social ou exceptionnellement en tout autre endroit à désigner dans la convocation. Un Gérant peut convoquer une Assemblée Générale Extraordinaire chaque fois qu'il l'estime nécessaire.

Article 23 :

Chaque part sociale confère une voix. Les associés peuvent se faire représenter aux Assemblées Générales ou émettre leur vote par écrit.

Article 24 :

Lorsque l'Assemblée Générale est appelée à décider une modification aux statuts comme une augmentation ou une réduction de capital social, une dissolution de la société, une transformation ou fusion avec une autre, une modification de l'objet social, la convocation doit mentionner l'objet de la modification proposée.

Article 25 :

L'Assemblée Générale Extraordinaire réunie pour modifier les statuts doit, pour délibérer valablement, constater que les associés présents ou représentés représentent la moitié au moins du nombre des parts sociales. Si cette condition n'est pas remplie, un procès-verbal de carence est dressé, une nouvelle convocation sera envoyée aux associés et la seconde Assemblée délibérera valablement quel que soit le nombre de parts sociales possédées par les associés présents ou représentés. Aucune modification ne peut être décidées qu'à la majorité des trois quarts des voix pour lesquels il est pris part au vote. Si la modification concerne l'objet social ou la nationalité de la société, la majorité requise est portée au quatre cinquième des voix.

## TITRE V :
*Inventaire ó Bilan*

### Article 26 :

Løexercice social commerce le premier janvier et se termine le trente et un décembre de chaque année. Exceptionnellement, le premier exercice social prendra cours à la date de la signature des présentes, pour se terminer le trente et un décembre.

### Article 27 :

Chaque année, la gérance doit dresser un inventaire contenant løindication des valeurs mobilières et immobilières ainsi que toutes les créances et les dettes de la société avec une annexe contenant, en résumé, tous les engagements, notamment les cautionnements et autres garanties, ainsi que les dettes et créances de chaque associé, Gérant et Commissaire à løégard de la société.

### Article 28 :

La gérance doit faire chaque année rapport sur løaccomplissement de son mandat et sur les opérations de la société réalisées au cours de løexercice social. Ce rapport doit commenter le bilan et le compte de pertes et profits et faire des propositions sur løaffectations des bénéfices éventuels. Le bilan et le compte de pertes et profits sont déposés par la gérance dans les trente jours de leur approbation au registre du commerce du siège social.

### Article 29 :

Løexcédent favorable du bilan, après déduction des charges, frais généraux et amortissements nécessaires, constitue le bénéfice net de la société. Il est réparti entre les associés, en proportion des parts quøils possèdent, chaque part donnant un droit égal. LøAssemblée Générale peut toutefois décider que tout ou partie des bénéfices est affecté à la création døun fonds de réserve spécial ou døun fonds døamortissement de parts sociales ou reporté à nouveau.

## TITRE VI :
*Dissolution- Liquidation*

### Article 30 :

La société pourra être dissoute par anticipation moyennant løobservance des dispositions prescrites pour les modifications des statuts. En cas de perte de la moitié du capital, la gérance doit soumettre à løAssemblée Générale délibérant dans les formes prescrites pour les modifications aux statuts, la question de la dissolution de la société. Si la perte atteint les trois quarts du capital, la dissolution pourra être décidée par les associés possédant un quart des parts sociales.

### Article 31 :

En cas de dissolution de la société, løAssemblée Générale a les droits les plus étendus pour désigner le ou les liquidateurs, déterminer leurs pouvoirs et émoluments et fixer le mode de liquidation. Les pouvoirs de løAssemblée Générale demeureront intacts pendant toute la durée de la liquidation.

## TITRE VII :
*Divers*

### Article 32 :

Tout associé domicilié ou résidant en dehors de la République Démocratique du Congo, est réputé domicilié aux adresses susmentionnées où toutes correspondances, convocations, sommations, assignations et significations lui seront valablement faites. Les Gérants, Commissaires et liquidateurs qui résident hors de la République Démocratique du Congo sont réputés, pendant la durée de leurs fonctions, avoir élu domicile au siège social de la société où toutes correspondances, assignations et notifications leur seront valablement données relativement aux affaires de la société et à la responsabilité quøils pourraient encourir du chef de leur gestion et contrôle. Les Gérants, Commissaires et liquidateurs reconnaissent renoncer au bénéfice du domicile élu susmentionné si les actes sont signifiés en leurs domiciles privatifs.

### Article 33 :

Toutes clauses des présentes qui pourraient être contraires à des dispositions impératives du Décret du vingt trois juin mil neuf cent soixante tel que modifié à ce jour, sont considérées comme non-écrites et toutes dispositions impératives dudit Décret ne figurant pas dans les présents statuts, sont censées en faire partie intégrante.

### Article 34 : Dispositions transitoires

A løinstant, la société étant constituée, les comparants ont déclaré complémentairement et à løunanimité, de se réunir en Assemblée Générale, aux fins de fixer le nombre primitif de Gérants, de procéder à leur nomination et déterminer løétendue de leur pouvoir puis de reprendre au compte de la société les engagements antérieurs à la formations de celle-ci. A løunanimité, løAssemblée décide de fixer le nombre de Gérant à une personne. Elle appelle à ces fonctions : Monsieur Selemani Francis Mtwale, pré qualifié, qui accepte. La durée de son mandat est illimitée. Son mandat sera rémunéré. Les pouvoirs du Gérant sont déterminés à løarticle dix sept des présents statuts. Les associés prennent acte des engagements pris préalablement à la constitution de la société et les reprennent au compte de cette dernière.

Ainsi fait à Kinshasa le 20 janvier 2003.

Lecture faite, les comparants ont signé

1. Selemani Francis Mtwale
2. Zoe Francis Mtwale
3. Masengo Francis Mtwale
4. Mlindwa Francis Mtwale
   Représenté à løacte par sa mère Vumilia Thomas ;

*Acte notarié*

Løan deux mille trois, le vingt troisième jour du mois de janvier, Nous soussigné Jean A. Bifunu Møfimi, Notaire de la ville de Kinshasa, certifions que løacte dont les clauses sont ci-dessus insérées nous a été présenté ce jour à Kinshasa par :

1. Selemani Francis Mtwale, Administrateur de sociétés, de nationalité congolaise, né à Moba (RDC) le vingt cinq mars mille neuf cent soixante dix sept demeurant avenue Eboka n° 18, quartier joli parc à Kinshasa, commune de ngaliema ;

2. Zoe Francis Mtwale, Administrateur de sociétés, de nationalité congolaise, né à Dar Es-Salaam (Tanzanie), le vingt six juin mille neuf cent soixante dix huit demeurant avenue Eboka n° 18, quartier joli parc à Kinshasa, commune de ngaliema ;

3. Masengo Francis Mtwale, Administrateur de sociétés, de nationalité congolaise né à Dar Es-Salaam (Tanzanie), le vingt trois mars mille neuf cent quatre vingt un demeurant avenue Eboka n° 18, quartier joli parc à Kinshasa, commune de ngaliema ;

4. Mlindwa Francis Mtwale, mineur døâge, de nationalité congolaise né à Dar Es-Salaam (Tanzanie) le vingt sept mars mille neuf cent quatre vingt sept, demeurant avenue Eboka n° 18, quartier joli parc à Kinshasa, commune de ngaliema, représenté à løacte par sa mère Vumilia Thomas ;

Comparaissant en personne ; lecture de løacte susdit a été faite par nous, Notaire aux comparants ; les comparants pré qualifiés ont déclaré devant nous que løacte susdit tel quøil dressé renferme bien løexpression de leur volonté.

En foi de quoi, les présentes ont été signées par nous, Notaire, et les comparants et revêtues du sceau de l'Office Notarial de la ville de kinshasa.

*Les Comparants*            *Le Notaire*

Selemani F. Mtwale          Jean A. Bifunu M'fimi

Zoe F. Mtwale

Masengo F. Mtwale

Mlindwa F. Mtwale
Représenté par sa mère Vumilia Thomas

Droits perçus : Frais d'acte : 4.000 FC suivant quittance numéro : R4/BIC en date de ce jour.

Enregistré par nous soussigné, ce vingt trois janvier deux mille trois à l'Office Notarial de la ville de Kinshasa, sous le numéro : 141.014 ; Folios : 16-26 ; Volume : LDXXVI

*Le Notaire*

Jean A. Bifunu M'fimi

Pour expédition certifiée conforme :

Coût : 4.000FC   Quittance numéro : R4/BIC

Kinshasa le 23 janvier 2003.

*Le Notaire*

Jean A. Bifunu M'fimi

_____

**Compagnie des Margarines, Savons et Cosmétiques, en abrégé « Marsavco »**

Société par actions à responsabilité limitée

Siège social : Kinshasa, 1, Avenue Kalemie

Nouveau Registre du commerce de Kinshasa n° 942

Identification nationale n° 01-314-AO1725 A

*Assemblée Générale Extraordinaire*

A date ci-après de l'acte notarié, a été enregistré, à l'Office Notarial de la vile de Kinshasa, le procès-verbal de la réunion de l'Assemblée Générale Extraordinaire tenue le vendredi 12 septembre 2003 à 11 heures, par les actionnaires de la Société par Actions à Responsabilité Limitée « Marsavco », mieux identifiée ci-dessus.

BUREAU

La séance est ouverte sous la présidence de Monsieur Mushtaque Rawji, Président du Conseil d'Administration qui nomme Monsieur Rajesh NAMBIAR, en qualité de secrétaire et désigne Messieurs Murtaza Rawji et Aslam Rawji en qualité de scrutateurs.

COMPOSITION DE L'ASSEMBLEE

Les sept actionnaires, détenant ensemble l'universalité des vingt-trois mille quatre-vingt-deux actions sont présents ou représentés, à savoir :

1. Monsieur Murtaza Rawji, de nationalité britannique, né à Kisangani (RDC), le 13 février 1964, résidant à Kinshasa, propriétaire de 4.616 actions          : 4.616

2. Monsieur Mazhar Rawji, de nationalité britannique, né à Kisangani (RDC), le 6 juin 1958, résidant à Kinshasa, propriétaire de 4.616 actions…………… : 4.616

3. Monsieur Aslam Rawji, de nationalité britannique, né à Kisangani (RDC), le 19 mai 1956, résidant à Kinshasa, propriétaire de 4.616 actions………… . : 4.616

4. Monsieur Zahir Rawji, de nationalité canadienne, né à Kisangani (RDC), le 24 septembre 1952, résidant à Kinshasa, propriétaire de 4.155 actions…… . : 4.155

5. Monsieur Mushtaque Rawji, de nationalité britannique, né à Kindu (RDC), le 20 mai 1951, résidant à Kinshasa, propriétaire de 4.155 actions………… : 4.155

6. Monsieur Ali Reza Rawji, de nationalité canadienne, né à Kinshasa (RDC), le 2 novembre 1978, résidant à Kinshasa, propriétaire de 462 actions……… : 462

7. Monsieur Mustafa Rawji, de nationalité britannique, né à Londres (Angleterre), le 3 juillet 1979, résidant à Kinshasa, propriétaire de 462 actions……… : 462

Total : Vingt-trois mille quatre-vingt-deux actions      : 23.082

PROCURATIONS

Les actionnaires sub numeris 6° et 7° sont représentés par l'actionnaire Zahir Rawji, en vertu de deux procurations spéciales datées des 2 et 4 septembre 2003, lesquelles sont déposées sur le bureau de l'Assemblée.

EXPOSE

Le Président expose que :

I. La présente Assemblée a pour ordre du jour :

   1. Augmentation du capital social pour le porter de Francs congolais quatre cent soixante quatre millions deux cent quinze mille cent nonante-deux, centimes douze (FC 464.215.192,12) à Francs Congolais cinq cent dix huit millions sept cent quatre vingt sept mille cinq trente trois, centimes douze (FC 518.787.533,12) par incorporation de la plus-value de réévaluation d'un montant de Francs Congolais cinquante quatre millions cinq cent septante deux mille trois cent quarante et un (FC 54.572.341,00) en application de l'ordonnance Loi n° 89-017 du 18 février 1989 autorisant la réévaluation de l'actif immobilisé des entreprises telle que modifiée et complétée par l'Arrêté Ministériel n° 017/CAB/MIN/FIN/98 du 13 avril 1998 et sans création des parts sociales nouvelles.

   2. Constatation de la réalisation de l'augmentation du capital.

   3. Modification des articles 5 et 6 des statuts pour les mettre en concordance avec les résolutions qui seront prises.

   4. L'engagement des actionnaires de pouvoir au financement du projet d'investissement de la société.

   5. Divers.

II. Les sept actionnaires détenant ensemble l'universalité des vingt-trois mille quatre-vingt-deux actions nominatives représentant le capital de la société étant présents ou représentés, ils déclarent expressément renoncer aux délais et formalités de convocation.

III. Compte tenu des points figurant à l'ordre du jour, l'Assemblée Générale peut délibérer et statuer valablement, quelle que soit la portion du capital social représentée. La présente Assemblée peut donc délibérer valablement sur les objets à l'ordre du jour.

IV. Pour être admises, les propositions à l'ordre du jour doivent réunir la majorité des voix.

V. Chaque part sociale donne droit à une voix. Toutefois, nul ne peut prendre part au vote, soit comme propriétaire, soit comme mandataire, pour un nombre de voix dépassant la cinquième partie du nombre des voix attachées à l'ensemble des titres ou les deux cinquième du nombre des voix attachées aux titres représentés. En conséquence, nul ne peut prendre part au vote, pour lui-même et pour ses mandants pour plus de quatre mille six cent seize voix (4.616).